**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

WILMINGTON SAVINGS FUND
SOCIETY, FSB, AS OWNER
TRUSTEE OF THE RESIDENTIAL
CREDIT OPPORTUNITIES
TRUST VIII-A,

     Plaintiff,

v.

                             No. 1:24-CV-00104-MLG-KK

STEVE W. JARAMILLO and
DINAH JARAMILLO,

     Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT TO FORECLOSE ON REAL ESTATE**

Before the Court is Plaintiff Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust VIII-A's ("Wilmington") Motion for Summary Judgment to Foreclose on the Real Estate. Doc. 31. Wilmington seeks an in rem judgment against the property at issue. Doc. 31 at 2. Defendants Steve W. Jaramillo and Dinah Jaramillo ("the Jaramillos") did not file a response. _See_ Doc. 36. Having review the motion and the record, the Court finds that Wilmington has demonstrated an absence of a genuine issue of material fact and is entitled to a judgment as matter of law.[1]

**I.       LEGAL STANDARDS**

---

[1] The Court recognizes that the likely result of this decision—foreclosure of the Jaramillos' home—is significant. But the Jaramillos were afforded an extended period of time and numerous opportunities to avoid this result. _See_ Doc. 24, 31, 35. The Court is nonetheless cognizant of the profound impact that the loss of a home may have on the Jaramillos and their family, and it does not minimize the seriousness of that consequence.

**A.      Pro Se Litigants**

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status, however, "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994); *see also Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (noting the Tenth Circuit "has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants'" and collecting cases (quoting *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992))). All parties are expected to satisfy procedural directives and it is incumbent on a pro se litigant "to become familiar with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of New Mexico[.]" Guide for Pro Se Litigants at 4, United States District Court, District of New Mexico (October 2022). Courts "will not supply . . . factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). And while caution should be exercised when ruling on a motion for summary judgment against a pro se litigant, the Court may not assume the role of advocate. *See Hall*, 935 F.2d at 1110.

**B.      Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the movant has the burden of demonstrating the "absence of any issues of material fact." *See Shapolia v. Los Alamos Nat'l Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted). This showing is typically made through specific reference to discovery materials, depositions, or

other admissible evidence. *Mayer Botz Enters. LLC v. Cent. Mut. Ins. Co.*, 720 F. Supp. 3d 1081, 1082 (D.N.M. 2024). If the movant clears this initial hurdle, then the nonmovant must come forward with specific factual support showing that there is a genuine issue for trial as to the elements essential to the claims at issue. *Id.* ("[I]t is incumbent on a party challenging a party's request for summary judgment to proffer some evidence—deposition testimony, documents, or otherwise—that creates a triable question."). A party who disregards this directive does so at their own peril. "All material facts set forth in the [motion for summary judgment] will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ 56.1(b). Accordingly, if a party does not respond to a motion for summary judgment, they waive the right to contest the movant's factual assertions. *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

Still, "a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party." *Id.* This Court must make the "additional determination that judgment for the moving party is 'appropriate' under Rule 56." *Id.* That assessment requires consideration of the claims in conjunction with the unchallenged facts while remaining cognizant of the relevant burdens. Specifically, the moving party remains obligated to demonstrate entitlement to judgment. *Id.* "If the evidence produced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *Adamson v. Lyons*, No. 8-CV-420 WJ/KBM, 2010 WL 11590711, at *2 (D.N.M. June 2, 2010) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)) (emphasis removed).

## II.     UNDISPUTED MATERIAL FACTS[2]

---

[2] Because the Jaramillos failed to file a response to the Motion for Summary Judgment, the Court deems the facts set forth in the Motion are undisputed. *See* Doc. 36; *Reed*, 312 F.3d at 1195.

On July 2, 2007, the Jaramillos executed a promissory note ("Note") in favor of CitiFinancial, Inc. evidencing a debt in the principal sum of $162,700.23 with a fixed interest from said date at the Note rate of 12.16% per year until paid. *See* Doc. 1-2 at 1. They also executed a corresponding mortgage instrument ("Mortgage") covering the property located at 152 Peyton Road, Los Lunas, NM 87031 (hereafter "the Property"). Doc. 1-3 at 1.[3] Two modifications followed thereafter. First, in 2018, the Jaramillos executed a Loan Modification Agreement where the unpaid principal balance was adjusted to $173,927.26, the term of the loan was lengthened, and the interest rate was adjusted to the rate of 4.875%. Doc. 1-4 at 3. The Jaramillos next entered into a second Loan Modification Agreement with a modified unpaid principal balance of $209,586.57 and with interest at a modified rate of 6.375% on December 14, 2022. Doc. 1-5 at 2, 3. Both modification agreements were necessary due to the Jaramillos' successive defaults on the loan. *See* Doc. 1-4 at 2; Doc. 1-5 at 1.

In the eight years following consummation of the contract, the Mortgage was reassigned several times to different companies—eventually to Wilmington. Doc. 1-7 at 1-15. It possessed the Note indorsed in blank prior to filing suit. *See* Doc. 1-6 at 1 ¶¶ 2-3; *id.* at 7; Doc. 1 ¶¶ 16-19.

During this litigation, the Jaramillos and Wilmington reached consensus regarding new terms of the Note. The parties subsequently entered into a third Loan Modification Agreement ("2024 Loan Modification Agreement") memorializing the parties' agreement. *See* Doc. 31-2 at 1 (noting existing arrears); Doc. 24. The Jaramillos agreed to pay a modified unpaid principal balance of $244,615.64 with a modified interest rate of 8% per annum, and a new monthly payment of $1,700.84. Doc. 31-2 at 2 ¶¶ 2-3. They also agreed to the inclusion of a "Trial Payment Period" clause extending from December 1, 2024 to November 1, 2025. *Id.* at 2 ¶ 1. That provision

---

[3] The full property description is set forth in the Mortgage. Doc. 1-3 at 1.

provided that if the Jaramillos failed to make a monthly payment or exceeded a delinquency of thirty days or more during that period, they "agree[d] to stipulate to Foreclosure and waive[d] their right to all defenses upon default" of the 2024 Loan Modification Agreement. *Id.*

The Jaramillos again failed to uphold their end of the deal. They have not made payment since January 1, 2025, and are in default on their loan obligation. Doc. 31-1 at 2 ¶ 7.[4] As of March 21, 2025, Wilmington is entitled to recover pursuant to the Note and Mortgage $251,587.35, which breaks down as follows:

| | |
|---|---|
| Unpaid Principal Balance: | $244,523.23 |
| Accrued Interest through March 21, 2025: | $45,948.96 |
| Lender Placed Insurance: | $995.15 |
| Loan Payoff Charges: | $120.00 |
| Insufficient Funds/NSF Charge: | $25.00 |
| Credit for Suspense Balance: | -$24.99 |

*Id.* at 3 ¶ 10. Interest continues to accrue in the amount of $53.63 per day from March 22, 2025 forward until the outstanding loan obligation is paid or satisfied through a foreclosure judgment in this matter. *Id.* at ¶ 11.

The 2024 Loan Modification Agreement requires the Jaramillos to pay attorneys' fees in the event of default. Doc. 31-2 at 5 ¶ 19(b). The Mortgage also permits attorneys' fees to be recovered if Wilmington seeks to enforce its remedies, which include foreclosure. Doc. 1-3 at 3-4 ¶¶ 18-19. Wilmington has incurred $6,268.00 in attorney's fees and related gross receipts tax of $477.94 associated with those fees since the 2024 Loan Modification Agreement was executed.

---

[4] The Mortgage provides that if there is a default in the payment of loan installments, upon acceleration the entire principal sum with accrued interest shall come due, and Wilmington may foreclose the Mortgage. Doc. 1-3 at 3 ¶ 18. Wilmington provided the Jaramillos notice of default and acceleration of the debt prior to the filing this case. Doc. 31-1 at 2 ¶ 7. Wilmington sent a loan modification denial letter to the Jaramillos on February 13, 2025. *Id.* at ¶ 8.

Doc. 31-4 at 2 ¶ 5. Plaintiff's counsel attests Wilmington will incur at least $1,500 in additional attorneys' fees and related gross receipts tax of $114.38 through the conclusion of litigation. *Id.*

## III.    DISCUSSION

**A.  Wilmington has standing to foreclose on the Mortgage.**

In New Mexico, a "plaintiff seeking to foreclose a mortgage must show standing at the time of filing by demonstrating that it has the right to enforce the mortgage lien and the underlying promissory note." *Bank of N.Y. Mellon as Tr. for Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-9 v. Luu*, 2019-NMCA-053, ¶ 10, 448 P.3d 625 (citing *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 8, 336 P.3d 443). To establish the right to enforce the note, a plaintiff must prove it is either: "(i) the holder of the instrument[;] (ii) a nonholder in possession of the instrument who has the rights of a holder[;] or (iii) a person not in possession of the instrument who is entitled to enforce the instrument[.]" NMSA 1978, § 55-3-301 (1992). "A plaintiff may show it is the holder of a note and satisfy the requirements of standing by attaching a note indorsed in blank to its complaint." *Bank of N.Y. Mellon*, 2019-NMCA-053 at ¶ 10 (citing *Deutsche Bank Nat. Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 23, 369 P.3d 1046).

Here, Wilmington established it was the holder of the Note by attaching a true and correct copy of the Note indorsed in blank to its Complaint. *See* Doc. 1 at 3 ¶ 9; Doc. 1-2; Doc. 1-6 at 1 ¶ 4. Wilmington further demonstrated it possessed the note prior to initiating this litigation. Doc. 1-6 at 1 ¶ 3. Additionally, there is no dispute that Wilmington was assigned the Mortgage in 2023. Doc. 1-7 at 13-15. These collective facts are sufficient to establish Wilmington had the right to enforce the Note and therefore had standing at the time of filing. *See Bank of N.Y. Mellon*, 2019-NMCA-053 at ¶ 11 (concluding a copy of the indorsed note included as an exhibit to the complaint

6

and an affidavit from counsel attesting to the possession of the original note was a prima facie showing of standing).

**B. Foreclosure is warranted due to the failure to make payments under the 2024 Loan Modification Agreement and the outstanding loan obligation.**

Once possession of the original note is shown, "the [creditor] may sue either on the note or foreclose on the mortgage." *Wilmington Sav. Fund Soc'y, FSB v. Hutchins*, 2019 WL 6975042, at *4 (D.N.M. Dec. 20, 2019) (quoting *Romero v. Onewest Bank, FSB*, No. 32,551, ¶ 7, 2013 WL 5309570, at *2 (N.M. Ct. App. 2013) (unpublished)). "The distinction between the two remedies . . . [is] that a foreclosure action is purely quasi in rem, affording relief only against the secured property," whereas an action on the note is in personam. *Kepler v. Slade*, 1995-NMSC-035, ¶ 8, 119 N.M. 802, 896 P.2d 482. Accordingly, a "judgment of foreclosure applies only to the property secured by the mortgage and does not impose any personal liability on the mortgagor." *Id.*

It is undisputed that the Jaramillos failed to make payments under the 2024 Loan Modification Agreement. Doc. 31-1 at 2 ¶ 7, Doc. 31-2 at 2 ¶ 1. The uncontroverted evidence also demonstrates they failed to make payments on the loan obligation prior to the 2024 Loan Modification Agreement. *See* Doc. 1-5 at 1 (noting the Jaramillos were in arrears as of December 14, 2022); Doc. 31-2 at 1 (noting existing arrears). Therefore, Wilmington has established as a matter of law that the Jaramillos breached the 2024 Loan Modification Agreement by not paying the amounts due. The terms of the Mortgage and the 2024 Loan Modification Agreement entitle Wilmington to foreclose the Mortgage and have the Property sold. Doc. 1-3 at 3 ¶ 18, Doc. 31-2 at 3 ¶ 10. Summary judgment is therefore proper, and Wilmington may foreclose on the property.

**C. Wilmington's damages may be determined at the summary judgment stage.**

Damages may be decided in a motion for summary judgment. *See Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1117 (10th Cir. 2009) ("[A] district court [may] grant summary

judgment *sua sponte* on any and all aspects of [a] claim, including damages, if there [are] no genuine issues of material fact, and [the non-movant] had notice of its duty to proffer all evidence . . . ." (citations omitted)). Wilmington's damages in this case are readily ascertainable given the debt owed following the nonpayment of the 2024 Loan Modification Agreement and Note. *See* Doc. 31-1 at 2 ¶¶ 10-11. Based on the record, there are no genuine disputes as to any material facts regarding Wilmington's damages. The Court will therefore enter a separate order of foreclosure entering an in rem judgment of $251,587.35 with per diem interest in the amount of $53.63 beginning from March 21, 2025 onwards. The order shall also appoint a special master to conduct the foreclosure auction to satisfy the outstanding amounts owed on the loan obligation.

Wilmington also moves for an award of attorney fees incurred after the effective date of the 2024 Loan Modification Agreement. Both the Agreement and the Mortgage authorize the recovery of such fees under these circumstances. Doc. 31-2 at 5 ¶ 19(b); Doc. 1-3 at 3-4 ¶¶ 18-19. In diversity cases, attorney fees are governed by state law, and contractual attorney fee provisions are enforceable. *See Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008); *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 19, 140 N.M. 879, 149 P.3d 976.

The Court finds that Wilmington's requested fees are reasonable and recoverable under the parties' agreement. Accordingly, Wilmington is awarded $7,768.00 in attorney fees and $592.32 in gross receipts tax, to be included in the separate order of foreclosure.

## VI.    CONCLUSION

Wilmington's Motion for Summary Judgment to Foreclose on the Property is granted. The Court will enter a separate judgment and order of foreclosure regarding the in rem judgment, appointment of the special master, and award of attorney's fees.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

9